IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY M. DALE, | : | CIVIL ACTION NO. **3:CV-04-1476** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The Plaintiff, Harry M. Dale, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied his claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Act), 42 U.S.C. §§ 1381-1383(f).

## I. PROCEDURAL HISTORY.

The Plaintiff filed an application for DIB on September 5, 2002, alleging an inability to work since December 16, 2001, due to neuropathy (numbness and pain in lower extremities and hands), a knee injury and high liver enzymes and, claiming that due to pain in his knee, he was unable to move around properly. (R. 80).[1] His claim was denied, and a timely request for a hearing was filed. (R. 11). A hearing was conducted before an Administrative Law Judge ("ALJ")

---

[1]There is no dispute that the Plaintiff meets the nondisability requirements for DIB and is insured for disability benefits through the date of the ALJ's decision, February 18, 2004. (R. 14). The record reveals that Plaintiff had past work experience to provide insured status. (R. 81). We also note that the Plaintiff's date last insured is September 30, 2007. (R. 14).

on October 22, 2003.  Plaintiff was denied benefits pursuant to the ALJ's decision of February 18, 2004. (R. 13-213).

The Plaintiff requested review of the ALJ's decision by the Appeals Council.  Said request for review was denied on May 12, 2004 (R. 5), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g). That decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs. 9, 10  & 11).

## II. STANDARD OF REVIEW.

When reviewing the denial of DIB, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).  It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The parties agree on the stated standard of review.  (Doc. 5, p. 4 & Doc. 6, pp. 1-2).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he

2

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III. ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).[2]

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulation No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider

---

[2]The Defendant  also states the evaluation process in her Brief.  Doc. 10, p. 5.

whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id.*

The ALJ proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 21). In reaching this determination, the ALJ first found that Plaintiff had not engaged in substantial gainful work activity since his alleged onset date. (R. 19). Further, the ALJ determined that the medical evidence establishes that Plaintiff has polyneuropathy and Hepatitis C, and that they are impairments which are severe within the meaning of the Regulations, but not severe enough to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 15, 20). The ALJ found that Plaintiff's anxiety, depression and alcohol abuse were non-severe and that his alcohol abuse was not a factor material to the instant disability determination. (R. 15, 20).

The ALJ noted that Plaintiff's testimony is not completely credible or consistent with the record as a whole, to the extent that he claims limitations imposed by his impairment. (R. 17, 20). When assessing his residual functional capacity ("RFC"), the ALJ found that Plaintiff retains the

following residual functional capacity: to perform a full range of light work with no sitting restrictions and is able to stand and walk for 6 out of 8 hours.   (R. 18).   The ALJ also found that the Plaintiff's severe impairments  prevent him from performing his past relevant work, which was heavy work.  (R. 18).  Thus, the ALJ found that the Plaintiff met his burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that the Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(f), 416.920(f).  The final and fifth step requires an analysis of whether the Plaintiff, based on his age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy.  *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that the Plaintiff is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428.  In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments.  20 C.F.R. § 404.1523; *Plummer, supra*.  Based on Grid Rule 202.21, the Administrative Law Judge concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity to perform the full range of light work, he is capable of performing work that exists in significant numbers in the national economy.  (R. 19).  Thus, Plaintiff was found to be not disabled.  (R. 21).

The relevant time period for this case with respect to Plaintiff's DIB application is December 16, 2001 (alleged onset date), through February 18, 2004 (date of ALJ's decision).[3]

## IV. DISCUSSION.

This appeal involves the denial of Plaintiff's application for DIB. Plaintiff filed his application in September, 2002, which was denied in February, 2004, by the decision of an ALJ. The general issue in this case is whether substantial evidence supports the Commissioner's decision that the Plaintiff was not disabled. (R. 21).

While the ALJ found that the Plaintiff had severe impairments, namely, polyneuropathy and Hepatitis C, he determined that these impairments did not meet or medically equal a listed impairment. The Plaintiff contends that the ALJ erred in finding that he had the RFC to perform a full range of light work based on several alleged inaccuracies made by the ALJ with respect to the facts in the record; that the ALJ erred by discounting the opinion of his treating physician in his RFC evaluation; and that the ALJ erred by failing to give proper weight to his subjective complaints of pain. Finally, Plaintiff argues that the ALJ failed to meet his burden of showing that work exists in the national economy. (Doc. 9, pp. 6-7).

### A. Background

The Plaintiff was born on April 9, 1957. (R. 59). He was 46 years old at the time of the hearing before the ALJ on October 22, 2003. (R. 14). Thus, Plaintiff is a younger person. *See*

---

[3]In order to qualify for DIB, Plaintiff had to establish that he was disabled prior to his last date insured, which is not until September 30, 2007. (R. 14). The ALJ determined that Plaintiff was insured for disability benefits through the date of his decision and thus, he was eligible for DIB. (R. 19). *See* 20 C.F.R. 40.131(a); *Matullo v. Bowen,* 926 F. 2d 240, 244 (3d Cir. 1990).

20 C.F.R. § 404.1563(c).  (R. 120 ¶ 8.).  He has a high school education (R. 20, 86), and his past relevant work was a construction work glazier from 1975 to 2001.  (R. 81).  The Plaintiff alleges that he became disabled on December 16, 2001, the day he was laid off,  because of neuropathy, a knee injury and high liver enzymes. (R. 80).  The ALJ found that the Plaintiff's impairments, polyneuropathy and Hepatitis C, were severe and that his non-exertional impairments, anxiety, depression and alcohol abuse, were non-severe.[4]  However, the ALJ also found that the Plaintiff retained the residual functional capacity to engage in a full range of light work activity that involves no standing/walking of more than 6 out of 8 hours.[5]  Finding that the Plaintiff's RFC did not

---

[4]The distinction between exertional and non-exertional limitations is discussed in 20 C.F.R. §404.1569a.  Under that section,  "[t]he classification of a limitation as exertional is related to the United States Department of Labor's classification of various jobs by various exertional levels (sedentary, light, medium, heavy, very heavy) in terms of the strength  demands for sitting, standing, walking, lifting, carrying, pushing and pulling."20 C.F.R. §404.1569a(a). When the restrictions affect the claimant's ability to meet job demands other than strength demands, the limitations are non-exertional.  Examples of such non-exertional limitations are difficulty functioning because of nervousness, anxiety, depression, difficulty seeing, hearing, maintaining concentration and remembering. 20 C.F.R. §404.1569a.(c).

[5]Light work is defined as follows:

> (b) *Light work.*   Light work involves lifting no more than 20 pounds
> at a time with frequent lifting or carrying of objects weighing up to
> 10 pounds.  Even though the weight lifted may be very little, a
> job is in this category when it requires a good deal of walking
> or standing, or when it involves sitting most of the time with some
> pushing and puling of arm or leg controls.  To be considered
> capable of performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.  If someone
> can do light work, we determine that he or she can also do sedentary
> work, unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. §404.1567 (b).

preclude him from performing a full range of light work, the ALJ applied the Grid Rule and held that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 20, ¶ 12.).

### B. Medical Evidence

On appeal, the Plaintiff contends that the ALJ erred in his RFC determination, did not give proper weight to the opinion of his treating physician, and to the doctor's RFC findings regarding his limitations and his inability to perform substantial gainful activity.  The Plaintiff also contends that the ALJ failed to afford proper weight to his subjective complaints and that the ALJ failed to  show that work exists in the national economy which Plaintiff could perform.

In November, 2000, Plaintiff had right knee arthroscopy to repair tears in the menisci. Plaintiff also had chondromalacia in the right knee.[6]  (R. 115, 132).

Dr. Bosi treated Plaintiff in September, 2001, and indicated that he had neuropathy, alcoholism, impotence and probable alcoholic liver disease.  (R. 128).  The doctor opined that Plaintiff's neuropathy was probably secondary to his alcoholism.  (*Id*.).  Plaintiff indicated that he drank 15 to 20 beers per day for several years.  (R. 126).  In December, 2001, Dr. Bosi treated Plaintiff for anxiety and possible depression.  Plaintiff was directed to stay away from all alcoholic beverages.  (R. 124).  Dr. Manzella prescribed Buspar and Paxil for Plaintiff.  (R. 132).  Plaintiff was also taking Atavan.  Plaintiff was prescribed Librium as well.  Additionally, Plaintiff had Hepatitis C. (R. 140).

---

[6]Chondromalacia is the softening of any cartilage.  341 *Stedman's Medical Dictionary*, 27th Ed.

Plaintiff saw Dr. Manzella in May, 2002, Atavan was continued as well as Paxil.  Buspar was stopped.  The doctor advised Plaintiff to stop alcohol consumption immediately and to enroll in AA.  The doctor indicated that Plaintiff had not followed up with psychiatry, and he was again referred to psychiatry for depression and anxiety.  (R. 182).  Plaintiff had depression with alcohol abuse and neuropathy.  Dr. Manzella noted that Plaintiff was "extremely non-compliant with directions" and that he had not followed up with several directions.  (*Id*.).

Plaintiff was admitted to the hospital in June, 2002, for a drug overdose.  (R. 132).  Plaintiff was prescribed Librium.  During his hospitalization, Dr. Pascal saw Plaintiff and diagnosed him as having a major depressive disorder.  (R. 133).  Plaintiff was recommended for follow-up at the Mental Health Unit.  (R. 133).

Plaintiff was referred to Dr. Newton by Dr. Manzella and in August, 2002, Dr. Newton indicated that Plaintiff had abnormal liver tests related to his severe alcohol abuse.  (R. 149).  The doctor indicated that Plaintiff continues to drink at least one case of beer per day.  (*Id*.).   Dr. Newton explained to Plaintiff about the importance of abstaining from alcohol, but Plaintiff said that he does not feel that he can stop drinking everyday because of stress at work.  (*Id*.).

In August, 2002, and September, 2002, Dr. Perlmutter, who had treated Plaintiff from January, 2001, through February, 2002, for his right knee (R. 159-172), indicated that Plaintiff could return to light duty work as of August 9, 2002, and September 7, 2002, respectively. (R. 156, 157).

A state agency consultant doctor completed a RFC Assessment of Plaintiff in December, 2002, and found that Plaintiff could perform light work.  (R. 196-202).

Dr. Pradhan, a neurologist, examined Plaintiff in April, 2003, for evaluation of paresthesias and numbness, and found as follows:

> Motor examination revealed equal and symmetric strength both proximally as well as distally. He ambulated independently and without difficulty. DTR's were absent in both upper and lower extremities. There is no pronator drift. Romberg's was negative. Mild wide-based gait was seen. Sensory examination revealed diminished pinprick at the fourth and fifth digits bilaterally, being more prominent on the right. Tinel's sign was positive at the ulnar groove on the left, being present at the wrists bilaterally.

(R. 212).

Dr. Pradhan's impression was:

> This is a 45 year-old gentleman who presents for evaluation of paresthesias and numbness. His exam as well as recent diagnostic studies are consistent with polyneuropathy. He also has evidence of entrapment neuropathy at the ulnar nerve, as well as carpal tunnel. Lower extremities showed evidence of tarsal tunnel syndrome. Once again, there are various causes for his neuropathy, which most likely include toxic effects of long term alcohol use. Thyroid abnormality, B-12 deficiencies have essentially been found to be noncontributory.

(R. 212).

Plaintiff denied any loss of strength, visual distortions, ringing in his ears, difficulty swallowing, headaches, cardiac palpitations, shortness of breath and GI or GU complaints. (R. 212).

In April, 2003, Plaintiff stated that he tried a weight lifting program, but that he is very sore afterwards. He stated that he "does incredible amounts of repetitions in weight." (R. 244). Dr. Pradhan noted in April, 2003, that Plaintiff began increased activity, including strenuous weight lifting, which caused muscle discomfort. (R. 211).

10

On October 21, 2003, the day before Plaintiff's ALJ hearing, Dr. Manzella completed a RFC evaluation and indicated on a form that Plaintiff could not lift and carry any weight and that he could not use either foot for repetitive movements in pushing or pulling.  The doctor also indicated that Plaintiff could not bend, squat, crawl, climb or reach.  (R. 269).  The doctor also completed a form on the same day indicating that Plaintiff had severe limitations regrading his mental status and his ability to work and that he would have these severe impairments for his lifetime.  (R. 273-274).

After Plaintiff worked a few weeks in July- August, 2002, for King Glass Company, he began to receive unemployment benefits for 5 or 6 months.  (R. 32-33).[7]  During this time, if the union called Plaintiff back to work, he stated that he "would've had to – probably ... had to say yes. But I was in such pain."  (R. 33).  At the time of the ALJ hearing, Plaintiff was receiving Workmen's Compensation benefits.  (R. 36).

The Plaintiff stated in his application for DIB that his disability began on December 16, 2001, when he was laid off of work, and that his pain in his knee prevented him from moving around properly.  (R. 80).  Plaintiff stated that he was unable to work because of neuropathy, knee injury and high liver enzymes.  (*Id*.).

As stated, Plaintiff's treating doctor for his knee (right) impairment was Dr. Perlmutter.  (R. 159-172).  Plaintiff had received right knee surgery.  Plaintiff had a long history of alcohol abuse

---

[7]Plaintiff only earned $2740 in 2002.  R. 32.

and has polyneuropathy.  He has Hepatitis C.  Plaintiff has received anti-depressant medications for his anxiety and depression.

Plaintiff testified at the ALJ hearing that he has four children and lives with his common-law wife.  (R. 34).  Plaintiff stated that he does a little housework such as wash a dish here and there.  He does not mow the lawn; he stopped lifting weights after a couple of weeks in February or March, 2003; he gets up and showers, eats breakfast, and watches a lot of TV; he reads books; and he sits on the porch and does not play with his kids.  (R. 34-36).  Plaintiff's wife takes care of the children.  Plaintiff does not drive anymore.  (R. 44).

Plaintiff has received prescriptions of Librium, Paxil, Atavan, Buspar, and Neurontin medications.  Plaintiff stated that he has some improvement with Neurontin and that it helps somewhat with his pain.  It also makes him depressed and "knocks me for a loop."  (R. 43-44).  Plaintiff also stated at the ALJ hearing that he stopped drinking alcohol several months ago.  (R. 47).

The ALJ found that the Plaintiff's physical impairments are severe, but they did not meet or equal any listed impairment.  The ALJ also found that the Plaintiff's severe impairments do not prevent him from performing light  work.  The Plaintiff contends, in part, that this RFC finding is not supported by substantial evidence.  We agree with Defendant that the ALJ's RFC finding was supported by substantial evidence in light of the medical record as discussed above.

### D. Analysis

Plaintiff contends that the ALJ's RFC finding was erroneous since the ALJ misrepresented the evaluation dates and since it contains several factual inaccuracies.  The Plaintiff also argues that the ALJ's finding that his testimony was not completely credible was erroneous since it was based

on his  collection of unemployment benefits, and that the ALJ failed to give proper weight to his

complaints of pain.   The Plaintiff contends that the ALJ erroneously failed to fully consider the

evidence from his treating physician, namely the RFC evaluation of Dr. Manzella.   Thus, Plaintiff,

in part, requests that the decision of the Commissioner denying his DIB  be reversed  because the

ALJ failed to give appropriate weight to the opinions of his attending physician.   *See Mason v.*

*Shalala*, 994 F. 2d 1058, 1067 (3d Cir. 1993).   Finally, Plaintiff claims that the ALJ failed to meet

his burden of showing that work exists in the national economy which Plaintiff could perform.

The ALJ found that Plaintiff did have severe impairments (polyneuropathy and Hepatitis

C) based on the requirements set forth at 20 C.F.R. §§ 404.1520 and 416.920. (R. 20, @ ¶ 3.).

However, he also found that such impairments did not render the Plaintiff disabled.  (*Id*., ¶ 13.).

The existence of a medical condition does not demonstrate a disability for purposes of the Act.

Thus, the issue was not whether Plaintiff suffered from a medical condition, but whether that

condition results in a functional disability that prevents Plaintiff from performing substantial gainful

activity.  *See Petition of Sullivan*, 904 F. 2d 826, 845 (3d Cir. 1990).   As discussed above, we find,

contrary to Plaintiff's argument, that the medical evidence supported the ALJ's finding that the

Plaintiff was not disabled.

### i.  Alleged inaccuracies in the ALJ's Decision

Plaintiff initially argues that there were several factual inaccuracies in the ALJ's decision

such as the dates of Dr. Perlmutter's functional capacity evaluations.   As Plaintiff states, and

Defendant concedes, the correct dates were August and September, 2002, and not 2003, as the

ALJ indicated.  (R. 16, 154, 157).  However, as Defendant points out, the ALJ did correctly refer to

13

the exhibit number of the evaluations as Exhibit 16 F.  The ALJ also incorrectly referred to the date

of Dr. Manzella's RFC evaluations, physical and mental, as October, 2002, when in fact they were

dated October 21, 2003, the day before the ALJ hearing.  (R. 16, 269, 274).  However, again, the

ALJ cites to the correct Exhibit numbers when referring to these evaluations as Exhibits 31 F and 32

F.  More importantly, the ALJ correctly indicated the doctor's findings in these evaluations.  As

Defendant states, the ALJ did not determine the weight to be afforded these evaluations based on

their dates.  Rather, the ALJ stated that Plaintiff's own daily activities indicated that he could lift

something, contrary to Dr. Manzella's finding that Plaintiff could not lift anything, and that Plaintiff's

own testimony, his work activity and his function at the hearing contradicted Dr. Manzella's findings

that the Plaintiff had severe mental functional impairments for life.  (R. 16).  The ALJ's reasons for

the weight he afforded to Dr. Manzella's RFC evaluations were supported by the record, especially,

as stated, Plaintiff's own admission that he was lifting very heavy weights for a time.  Further, in his

September, 2002, Daily Activities Questionnaire ("DAQ"), Plaintiff indicated that he can take care

of his personal needs and that he has "no problems driving;" that he mows a small lawn with a push

mower; that he can load and unload 2 grocery bags form the car; that he reads a lot; that he does

some light duty home maintenance; that he can climb a flight of stairs 2 or 3 times a day; that he

can sit for about one hour; that he can lift about 30 pounds; and that he has no problems getting

along with people.  (R. 94- 97).

The Plaintiff also seemingly claims that the ALJ did not give proper weight to his

testimony since he was receiving unemployment benefits and that the ALJ held it against him that

he returned to his employment in August, 2002, and then was laid off.  The ALJ indicated that

Plaintiff worked enough to make him eligible for unemployment benefits and that to work during this time, Plaintiff would have had to represent that he was able to return to work. (R. 14-15). The ALJ considered Plaintiff's work in August, 2002, as an unsuccessful work attempt. The ALJ also found that the Plaintiff was not able to return to his past glazier work, which was at the heavy exertional level.[8]   However, t he ALJ found that Plaintiff had the RFC to perform a full range of light work and not for his past heavy work. This finding was supported by the record. (R. 156, 154, 197-202, 95). The Defendant also correctly states that the ALJ's disability determination under the Act is based on a different standard than a claim for Worker's Compensation.   (Doc. 10, p. 6).  The latter standard requires a showing that Plaintiff is not capable of returning to his past work. We have stated the relevant SSA disability standard above. Thus, whether or not Plaintiff received Worker's Compensation benefits is not relevant to the present DIB application.   Suffice to say that there is substantial evidence to support the ALJ's finding that Plaintiff could perform less exertional work than his previous employment.

### ii. The ALJ's RFC Finding That Plaintiff Could Perform A Full Range Of Light Work

As discussed, the ALJ found that the Plaintiff had physical impairments which were severe, but that they were not severe enough to meet or equal any listed impairment. The ALJ also found that the Plaintiff had the RFC to perform a full range of light work. Plaintiff alleges that the ALJ erred in finding that he could perform light work since he improperly rejected the opinion of

---

[8]Plaintiff does not dispute that his prior work was heavy in nature and admits this based on his job description.  R. 81.

Dr. Manzella, his treating doctor, that Plaintiff's physical and mental impairments precluded him from performing any work.   The Plaintiff states that the ALJ stated the wrong dates of Dr. Manzella's evaluations which made them appear as though were within the time frame of Dr. Perlmutter's evaluations.   The Plaintiff also states that Dr. Manzella's RFC evaluations considered all of his impairments, and not just his knee injury, which was only considered by Dr. Perlmutter.

The December, 2002, state agency doctor's RFC considered Plaintiff's physical impairments and found that he could perform light work. (R. 196-202).   Defendant also argues that Dr. Manzella did not have any special knowledge of Plaintiff's knee condition and alcohol abuse since he did not actively manage these conditions.  In April, 2003, Dr. Manzella noted that Plaintiff was still under the care of Dr. Newton for his Hepatitis C and that he will continue to follow conservatively.  With respect to Plaintiff's neuropathy, Dr. Manzella indicated that Plaintiff stopped his medications and that the doctor prescribed a diet and exercise program for him.  (R. 244).  Dr. Manzella noted that Plaintiff was not receiving any treatment for depression at the time.  (*Id.*).

Plaintiff also argues that the ALJ erred by not giving full credibility to his testimony and by ignoring the medical evidence and opinion of his treating doctor, which indicated that he was disabled.

Upon review, we find that the ALJ stated the reasons in his decision with respect to his RFC finding, by discussing the medical evidence, both objective evidence and the reports of Plaintiff's treating doctor, and explaining his reasoning.  (R. 16-18).  It is clear that the Third Circuit requires the ALJ to identify the relevant listed impairments and to provide an explanation of reasoning for a finding that a claimant does not meet or equal a listed impairment.   *See Burnett*,

16

220 F. 3d at 120.  We find that the ALJ has fully explained his reasoning as to why the Plaintiff's physical impairments did not meet or equal any of the musculoskeletal listings, specifically listing 1.00, et seq., and listing 5.00, *et seq.,* digestive system impairments.  (R. 15).  The ALJ found that the Plaintiff did not meet the requirements of either listing.

The ALJ also discussed the Plaintiff's RFC as a result of his physical impairments, as required by 20 C.F.R. § 404.1520.  (R. 16-18).  The Plaintiff's degree of functional abilities as a result of his physical impairments was also discussed by the ALJ as well.  (*Id*.).

The Plaintiff contends that the ALJ erred in rejecting the opinion of Dr. Manzella  and this doctor's physical and mental RFC findings.  However, contrary to Plaintiff's claim, Dr. Manzella's records did not show that his exercise program had to be stopped. (Doc. 9, p. 13). Rather, the record shows that on April 15, 2003, Plaintiff reported that he had muscle discomfort in his shoulder area with strenuous weight lifting. (R. 211).  On April 25, 2003, Dr. Manzella wrote out an extensive exercise program for Plaintiff, which Plaintiff stated he will follow.  (R. 244). Plaintiff does not cite to support in the record that Plaintiff could not perform the extensive exercise program Dr. Manzella prescribed for him at his April 25, 2003, visit. (Doc. 9, p. 13).  Dr. Manzella indicated on April 25, 2003, that, hopefully, with the diet and exercise program, Plaintiff will be able to join the work force again, but that at this time he was only cleared for rehabilitation activity. (R. 246).  This note does not support Dr. Manzella's October, 2003, physical RFC findings that Plaintiff could never lift and carry any weight.  (R. 269).

The treatment notes and findings of Dr. Manzella, as well as his opinion that Plaintiff was disabled, have been discussed above.  The Plaintiff claims that, based on these records, including

17

Dr. Manzella's stated RFC findings, he cannot engage in substantial gainful activity for at least 12 months. Under the Regulations, a plaintiff must establish that he is unable to engage in any substantial gainful activity by reason of a physical or mental impairment expected to result in death or last for a continuous period of at least twelve months. *See* 20 C.F.R. § 404.1505(a). The Defendant argues that the ALJ's RFC finding was proper based on his own assessment of the record, despite the opinion of Plaintiff's doctor that he was unable work.

The Court in *Burnett*, 220 F. 3d at 121, stated that the ALJ must consider all evidence before his in making a RFC determination. The *Burnett* Court further stated that, while the ALJ is permitted to weigh the credibility of the evidence, he is required to give some indication of the evidence which he rejects, as well as the reasons for discounting the evidence. *Id*. Thus, the ALJ must mention and refute some of the contradictory medical evidence before him. *Id*. *See also Adorn v. Shalala*, 40 F. 3d 43, 48 (3d Cir. 1994). We find that, in this case, the ALJ considered all of the medical evidence before him, and he mentioned and refuted some of the contradictory evidence, such as Dr. Manzella's RFC findings that Plaintiff was disabled. (R. 16). While the ALJ did not give significant weight to Dr. Manzella's opinion that Plaintiff was disabled, he did give sufficient support in the record for his RFC findings. Indeed, the ALJ properly did not give full weight to Dr. Manzella's mental RFC findings that Plaintiff had severe impairments in all areas of functioning, since in April, 2003, the doctor noted that Plaintiff was not receiving any treatment for his depression and no psychiatry referral was made. The doctor's note only indicates that the Plaintiff's underlying conditions will be treated and re-evaluated. Further, as stated, Dr. Manzella recommended an exercise program for the Plaintiff at this time.

The ALJ did, in fact, discuss Dr. Manzella's finding of disability (R. 17), but he (the ALJ) must decide the issue of disability under the Act.[9]   Thus, the ALJ properly did not give Dr. Manzella's opinion controlling weight since he found it inconsistent with the evidence of record. (R. 17).

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310  (3rd Cir. 2000).  The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)]  (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128;  *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989);  *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Brewster,* 786 F.2d at 585.  Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988);  *Kent*, 710 F.2d at 115.

*Id*. at 317-318.

---

[9]As the ALJ stated (R. 17), it is the ALJ's determination, and not Dr. Manzella's, as to whether the Plaintiff is disabled.  *Adorno. v. Shalala,* 40 F. 3d 43 (3d Cir. 1994).

We construe the Plaintiff as arguing that the ALJ erred in assessing the weight afforded to his treating physician's opinion and determination that he did not have the RFC to perform any work and was totally disabled. The ALJ did assess the opinion of Plaintiff's treating doctor, as discussed. The ALJ discussed the opinion of Plaintiff's doctor, and we agree with his conclusion that a finding of disability was not supported by his medical records, and by the record as a whole, including the medical evidence.

The ALJ considered Dr. Manzella's disability opinion (R. 244) and found that it was not consistent with the medical records, as discussed above. Further, as noted, it is the ALJ's determination as to whether the Plaintiff is disabled, and not Dr. Manzella's. *Adorno, supra.* The issue of disability determination is reserved to the Commissioner. 20 C.F.R. § 416.927(e)(3). The ALJ weighed the state agency diagnostic assessments and the relevant, objective medical evidence and concluded that Plaintiff was not completely disabled. *See Corly v. Barnhart*, 102 Fed. Appx. 752 (3d Cir. 2004); *see also Adorno v. Shalala*, 40 F. 3d 43, 47-48 (3d Cir. 1999) (holding that a statement by a treating physician deeming a plaintiff "disabled" or "unable to work" is not dispositive. An ALJ must review all the medical findings and other evidence and weigh it against the opinion of the treating physician).

The objective medical record in this case, as discussed above, reveals that the Plaintiff has chondromalacia of his right knee, neuropathy and Hepatitis C. The ALJ also considered the Plaintiff's daily activities in making his RFC determination. (R. 17-18). The ALJ considered a RFC Assessment performed on Plaintiff, which found that he could engage in light work. (R. 18). This assessment found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, that he

could stand or walk about 6 hours and sit about 6 hours in an 8-hour work day. (R. 197). We also find that the ALJ considered the Plaintiff's records that he lifted weights for 3 months and that he did not abide by his doctors repeated directions to cease alcohol consumption. (R. 17-18).

Based on the stated evidence, the ALJ also properly found that the Plaintiff's physical impairments did not meet listings 1.00, et seq. In light of the *Burnett* case, we find that the ALJ made proper discussion of the evidence regarding listings 1.00, *et seq.* and an explanation of reasoning that the Plaintiff's physical impairments, which were found to be severe, did not meet or equal listing 1.00, *et seq.*

As Plaintiff notes in his Brief (Doc. 9, pp. 13-15), while there is medical evidence regarding his neuropathy which indicated that Plaintiff met some of the criteria of listing 1.00, *et seq.*, such as Dr. Pradhan's finding that Plaintiff had an inhibited ability to ambulate (R. 223), there is substantial evidence to support the ALJ's decision that the Plaintiff's condition did not meet or equal listing 1.00, *et seq.* We also find that substantial evidence supports the ALJ's determination that Plaintiff's severe physical impairments did not meet Listings 1.00, *et seq.* The Plaintiff has the burden of proving that he meets each of the requirements of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff had normal tone and strength in is extremities. (R. 223). In fact, in April, 2003, Dr. Pradhan indicated that Plaintiff denied any loss of strength and that he could ambulate independently, without any difficulty, and that he had only mild wide-based gait. (R. 212).

The ALJ properly discussed the objective medical findings as they related to listing 1.00, *et seq.* As such, there is substantial evidence to support the ALJ's finding that the Plaintiff's physical

impairments were severe, that they did not meet or equal listing 1.00, *et seq,* and that he had the RFC to perform light  work.

### iii.  Plaintiff's Credibility

Plaintiff claims that the ALJ failed to give substantial weight to his subjective complaints of pain.   In this case, the ALJ considered the Plaintiff's testimony concerning the severity of his conditions, his symptoms, and the extent of his limitations, and he found that his testimony was not completely credible. (R. 15, 17-18).  The Plaintiff claims that this finding was erroneous.  The Plaintiff states that the ALJ improperly determined his credibility with respect to his testimony and the pain he experiences, since there was sufficient  medical evidence that he had loss of sensation, decreased dexterity, numbness, paresthesis, shooting pain, and sensitivity.  (Doc. 9, pp. 17-18).  As discussed, the ALJ did find that the Plaintiff had severe polyneuropathy, but that it did not meet listing 1.00, *et seq*.   We have found substantial evidence to support this finding as mentioned above.      Plaintiff also  claims that the ALJ improperly based his finding on the Plaintiff's failed work attempt and its relation to his collection of unemployment benefits.  The Plaintiff further  states that the ALJ used his inability to stop drinking against him.  (*Id.*, p. 18).

The Defendant states that the ALJ noted that Plaintiff had not followed his doctor's advice to stop drinking and that Plaintiff was able to lift weights in April, 2003 and yet claimed in October, 2003, that he could not perform any work.   Also as indicated above, Plaintiff in his DAQ admitted that he drives without any problems and without any modifications, and at the ALJ hearing about one year later, stated that he could not drive at all.  Plaintiff indicated in his DAQ he could lift up to 30 pounds and carry 2 grocery bags, but Dr. Manzella found that Plaintiff could not lift and

carry any weight.  Plaintiff stated that he could read a lot and watch TV a lot, but Dr. Manzella found that Plaintiff had severe mental impairments in all areas of functional abilities.

The Defendant argues that the ALJ's credibility finding was based on legally sufficient reasons.  We agree, since Plaintiff was able to care for his own basic needs; since Dr. Manzella recommended an exercise program for him as late as April, 2003; and since he was able to function at the hearing.

The ALJ also found that, if Plaintiff had the degree of pain he alleged, he would have followed his doctor's instructions.  (R. 17).  In fact, as mentioned, Dr. Manzella recommended exercise for the Plaintiff in April, 2003.  (R. 244).  The Plaintiff argues that the ALJ's conclusion is not supported by the evidence and his testimony.  The Defendant contends that the ALJ relied upon all of Plaintiff's symptoms, as well as the medical evidence and the other evidence in the record, as the basis for his credibility determination.  We agree with the Defendant that substantial evidence supports the ALJ's credibility determination.

An ALJ must give weight to a claimant's subjective testimony of his inability to perform even light or sedentary work, but only when the claimant's testimony is supported by competent medical evidence.  *Schaudeck v. Commissioner of Social Security*, 181 F. 3d 429, 433 (3d Cir. 1999).  The ALJ found that the medical evidence presented supports a conclusion that Plaintiff has pain, but that the severity of his pain and limitations  are not of the extent alleged by the Plaintiff. The ALJ found that the medical evidence, including the reports of Plaintiff's treating doctor, the objective medical tests, and Plaintiff's testimony, reveals that the Plaintiff had impairments and pain, but the ALJ found that Plaintiff could still perform light work.  (R. 18).  The ALJ's finding that Plaintiff

23

had no sitting restriction was supported by Plaintiff's testimony that he spent a lot of the day watching TV and sitting on his porch.  Hence, the ALJ found that Plaintiff did have pain related to his conditions, but not to the extent that all types of work are precluded.  Thus, the ALJ found that the Plaintiff was not fully credible regarding the severity of the symptoms he claimed.  The record, as detailed above, substantiates this finding.

The Plaintiff also states that the ALJ's credibility finding about him was not supported by the opinion of his treating doctor (Dr. Manzella) that he had pain, numbness and tingling, and thus was not supported by substantial evidence.   Defendant states that the ALJ correctly considered all of the evidence in making his credibility finding.  We find that the Plaintiff's aforementioned physical exam findings did not indicate that the Plaintiff could not perform light work.  In fact, as stated, Dr. Manzella recommended Plaintiff undertake an exercise program to help his condition. Plaintiff admitted that he could lift and carry things and that he cared for himself.

The ALJ found that the Plaintiff was not entirely credible.  The ALJ accurately discussed the Plaintiff's testimony and his daily activities stated in his testimony.  The ALJ found that the record as a whole, including the Plaintiff's daily activities, did not fully support Plaintiff's testimony regarding the extent of his disability.  The ALJ also considered all of the treatments which Plaintiff received and the medications and their effects on Plaintiff.

The Plaintiff's ability to lift within the requirements of light work was substantiated by the RFCA's findings (R. 196) and his DAQ.  The Plaintiff's daily activities can provide evidence of his symptoms and their effects on his ability to work.  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ properly considered the Plaintiff's activities of daily living.

The ALJ also clearly articulated his reasoning for finding that the Plaintiff's subjective complaints of pain were not fully credible, and this determination is supported by substantial evidence.

Further, as discussed above, we have also found that the ALJ properly determined the Plaintiff's RFC.  In this case, the ALJ determined that, despite his severe polyneuropathy and liver impairments, the Plaintiff did have the RFC to perform light work.

### iv.  ALJ's Burden That Jobs Exist in the National Economy

Plaintiff argues that the ALJ erred by failing to have the Vocational Expert testify at his hearing and erred in relying upon Dr. Perlmutter's 2002 evaluation that he could perform a full range of light work.  The Plaintiff claims that the ALJ failed to give more weight to the opinion of Dr. Manzella that he could not perform work activities and that the ALJ did not give his testimony as to his pain and limitations sufficient weight.  We have already discussed these issues above and shall not reiterate them.  The ALJ did consider Dr. Manzella's RFC evaluations, as well as the Plaintiff's testimony, and substantial evidence supports the weight afforded to this evidence by ALJ and the ALJ's credibility determination of the Plaintiff.

The Plaintiff claims that the ALJ failed to consider the side effects of his medications.  We have stated Plaintiff's testimony regarding his side effects, and the ALJ did, in fact, discuss them, contrary to Plaintiff's assertion.  (R. 17).  Further, drowsiness and other side effects of medications cannot be viewed as disabling unless the record provides medical evidence of serious functional limitations. *Burns v. Barnhart,* 312 F. 3d 113, 131 (3d Cir. 2002).

The Plaintiff contends that the ALJ failed to meet his burden at Step Five.  The Plaintiff states that the ALJ failed to consider all of his physical and mental impairments in making his RFC determination.  We have found, as discussed above, that substantial evidence supports the ALJ's RFC determination.  The Plaintiff also claims that the ALJ's failure to call the VE at his hearing and failed to allow his counsel to question the VE prevented him from developing a complete record. (Doc. 9, p. 21).  Plaintiff argues that the failure of the ALJ to call the VE to testify as to whether he could perform specific jobs in the economy based on his background and limitations  meant that the ALJ did not meet his burden at Step Five.

It is clear that an ALJ must develop the full record.  ALJ is required to evaluate all relevant evidence, *Fargnoli v. Massanari*, 247 F.3d 34, 40-41 (3d Cir. 2001), and explain his reasons for rejecting any such evidence.  *Burnett,* 220 F.3d at 122.  However, as Defendant asserts, at Step Five she can rely on the Grid Rules to meet her burden, namely Social Security Grid Rule 202.21.[10] The Defendant cites to *Heckler v. Campbell*, 461 U.S. 458 (1983).  (Doc. 10, p. 10).

In *Cartagena v. Comm. of HHS*, 2002 WL 334115 **1 (3d Cir.), the Court states that"in 1978, the Commissioner instituted 'medical-vocational guidelines, or grids,' to determine suitable jobs in the national economy for claimants with exertional impairments.  The grids consider physical ability, age, education, and work experience in identifying the types and numbers of jobs available to the claimant." (citations omitted).  When a plaintiff is found to suffer only from severe exertional impairments, as our Plaintiff in the instant case (R. 15), "a determination of disability is possible by applying the grids without reference to additional evidence." *Id*. at **2 (citation omitted.

---

[10]*See* Medical-Vocational Guidelines ("Grids"), 20 C.F.R., Pt. 404, Subpt. P, App. 2.

In the present case, as discussed, substantial evidence supported the ALJ's finding that the Plaintiff did not have severe non-exertional restrictions which limited his ability to perform a full range of light work.  Substantial evidence also supported the ALJ's reliance on the grids. Further, the ALJ was not required to call the vocational expert.

The Defendant next argues that based on the state agency's RFC assessment and Dr. Perlmutter's evaluation, there was substantial evidence to support the ALJ's finding that Plaintiff could perform the full range of light work.  As discussed in detail above, we concur with Defendant. The Defendant then states that it was the Plaintiff's burden to show that he had impairments supported by the medical evidence that reduced the range of light work that was available under the Grid Rules. (Id., p. 11).  The Defendant argues that the Plaintiff did not show that his ability to meet the requirements of light work have been diminished.

We agree with the Defendant and find that, based on Plaintiff's own admissions as to his daily activities, his lack of follow up treatment for his alcohol abuse and mental impairments, and the facts that he could lift up to 30 pounds (R. 95) and Dr. Manzella was recommending an extensive exercise program for him in May, 2003 (R. 244), and that Plaintiff lifted heavy weights for 3 months, Plaintiff's ability to meet the demands of light work was not reduced.

The Third Circuit, in *Burnett*, 220 F.3d at 126,  stated that a step five inquiry, which is at issue in this case, "can be quite fact specific,  involving more than simply applying the Grids, including, perhaps, testimony of a vocational expert." (Citation omitted).  However, in accordance with *Burnett* and *Cartagena*, the ALJ in this case conducted thorough factual findings with regard to Plaintiff's individualized limitations and ability to adjust in order to perform substantial gainful

activity.  Plaintiff's age and education are undisputed, he was found not to have any transferable

skills, and he was found incapable of performing his past relevant work.  Grid Rule § 202.00 (b)

provides:

> (b) The functional capacity to perform a wide or full range of light work
> represents substantial work capability compatible with making a
> work adjustment to substantial numbers of unskilled jobs and,
> thus, generally provides sufficient occupational mobility even for severely
> impaired individuals who are not of advanced age and have sufficient
> educational competence for unskilled work.

Thus, we fail to see how the ALJ's reliance on the cited Grid Rule was erroneous in this case and

that the testimony of the VE was required.  *See Cartagena, supra.*  We also find, as discussed, that

there was substantial evidence to support the ALJ's finding that the Plaintiff had the RFC to perform

a full range of light work.

**V.  Recommendation.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal of the

ALJ's decision be denied.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 1, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY M. DALE, | : | CIVIL ACTION NO. **3:CV-04-1476** |
| | : | |
| Plaintiff | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 1, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis

of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 1, 2005**